The first case today is 15-1065, United States v. Jose D. Cardona-Vicenty. Counsel, you may proceed. Thank you. Good morning. In the context of what was a multi-defendant drug conspiracy case occurring in Mayagüez, Puerto Rico involving 48 criminal defendants charged with drug distribution and possession of weapons, and where Mr. Cardona was defendant number one, no less. We would like to argue this morning, first of all, the existence of an actual conflict of interest stemming from the dual representation of Mr. Cardona by an attorney that also represented defendant number nine in the same case. We would like to further argue, going to the crux of the matter, how this dual representation affected the representation of Mr. Cardona in terms of plausible defense strategies which may have or should have been adopted but could not have been adopted by his counsel because those strategies would have been at odds with the defense of the other client. Normally, of course, we would hear an ineffective assistance of counsel claim in a subsequent petition and not on direct appeal. Why should we hear that issue on direct appeal? Your Honor, because, first of all, at issue here is an old case from the court, the U.S. v. Foster. I think, first of all, the record is developed enough for the court to entertain the factual matter regarding the conflict and how the district court failed to heed Rule 44 of the Federal Rules of Criminal Procedure and also failed to heed the prophylaxis measure of Foster. These are things that can come under direct appeal, Your Honor, because it's an error that occurs down below. And it's not a classic ineffective assistance case under the purview, for example, of Strickland. This is different. We are arguing a conflict which is not the same as an ineffective of counsel claim, which will come under 2255. Okay, so now let's work backwards. The district court, without doing a formal Foster hearing,  Well, Your Honor, we differ because our reading of the transcript, of course, is that when the matter of the dual representation came to light, that the court appointed Mr. Oppenheimer as both counsel for Cardona and then the continued representation of the other individual, the prosecutor and counsel, they both raised the issue. They raised a hypothetical issue that might come to pass, and the district court found that it did not, in fact, come to pass. Isn't that correct? Our view of events is different, Your Honor, because if I may, the prosecutor announced a very troublesome matter. One of the overt acts of the conspiracy was a violent act that regarded a murder where Mr. Contreras said, Your Honor, there is going to be or there could be an issue because relative to this one particular murder, the government of the United States has evidence that same was perpetrated by defendant number nine, who was Mr. Oppenheimer's other counsel, while he was in the free community, under orders of Mr. Cardona Vicente while he was in jail. And the prosecutor said, Your Honor, I think that's a classic situation that triggers application of foster, we should have a hearing, and what the district court said was, you people are making a molehill, an anthill, or... A mountain out of a mountain. Yes, one of those things. And it is a waste of the time of the court, and that to us, Your Honor, sounds like we're having, I mean, judges, you have seen so many drug conspiracy cases from Puerto Rico, what's the actual conflict, that's what Judge Lynch is trying to get you to answer here. Yes, I will get to that then. Okay. The moment that the matter of this murder is made relevant by the prosecutor, Mr. Oppenheimer's duties to each of those defendants to do certain things became triggered, and those things that Mr. Oppenheimer had to do for Mr. Cardona and for Mr. Kenneth Matos, defendant number nine, were at odds. Be more specific. What precisely would a totally unconflicted defense counsel have done differently than what happened here? Well, an unconflicted counsel would have, at the threshold, started investigating the facts surrounding that murder. Now, alleged murder. Mr. Cardona, if the court remembers, was, and this is what brings the whole matter to before Judge Fusted, he was alleging, after pleading guilty, that he was not a leader and he did not possess weapons. So, at the outset, defense counsel had to go interview Mr. Cardona about that murder committed by defendant number nine, and knowing how things are in these cases, where if you have a possible cross-reference for life imprisonment, Mr. Cardona would have likely said, I am in jail, I did not order anything, that was Mr. Kenneth Matos, in the turf war going on, when they took me out of the equation. You still haven't explained how the proceeding involving your client would have gone any differently in a way that would be advantageous to your client. Well, I think, now I understand the question. It's, under the case law, Judge, prejudice is presumed. We don't have to show, Mr. Cardona does not have to show, that the outcome would have been different. All Mr. Cardona has to show is, number one, the existence of a conflict, and number two, that alternative defense strategies may have been pursued that would have been indetricate. That's what we're asking you about. What is the alternative defense strategy that conceivably would have played out at all beneficial, even conceivably? Well, first of all, because it was not going to trial, and to bring this into context, it's even more relevant, because if a murder is being alleged as a sentencing factor, by preponderance, the government could get that proved, and that heightens the need of objective, non-conflicted counsel. So it was really not a matter of strategy. But the court didn't apply that enhancement. I'm sorry? The court didn't apply that enhancement. So we're trying to figure out what would have changed. In all likelihood, nothing changed in the end. But in our view, that is not of importance, because once a conflict is shown, and once it's, for example, Mr. Oppenheimer had to go investigate and interview each of those defendants as to what the other one did, and what we view is that that duty to investigate, in order, for example, to bring mitigation evidence as to defendant number nine, because if the murder came up at the sentencing hearing, the counsel Oppenheimer had to mitigate Mr. Kenneth Matos' participation. He would be sure he said, I was ordered to do it by Cardona. On Mr. Cardona's end, Mr. Oppenheimer had to look whether the two-level enhancement as leadership role was warranted. And Mr. Cardona was already saying, I don't have, I was not a leader, and that murder was committed by Mr., if it was committed at all, by Mr. Matos. So it's really, I mean, it's a duty to investigate, a duty to do things for clients. Judge Thompson pointed out that the enhancement for the murder was really not an issue in the case, given how it was tried. You seem to be shifting over from the murder question to a leadership role question, which was involved in the case. But I still don't understand how this would have made any difference to the outcome. I don't, no, strike back. I don't understand what the alternate strategy was that should have been pursued here. Well, it was a plausible alternate defense strategy of shifting blame from one defendant to the other. I show I'm not a leader by showing somebody else murdered somebody? Is that the theory? Because the prosecutor indicated that the murder was ordered by Mr. Cardona from prison as the leader and was ordered to Mr. Kenneth Matos. The leadership points become relevant because Mr. Cardona, thank you. You may finish this sentence. Yes. He was recanting on the leadership role, and that made, that triggered a duty for Mr. Oppenheimer to look into that, and looking into that would have caused problems for his other client. Okay. Thank you. Good morning. Juliana Cognatis for the government. May it please the court. Cardona's Vicente's appeal should be dismissed because his plea agreement contained a broad waiver of appeal that precluded him from contesting his conviction and sentence in this case. Now, it's undisputed that the waiver of appeal provision in Cardona's plea agreement was conditioned upon the fact that the district court was to accept the sentencing recommendation in the plea agreement, and generally, if this condition is not met, the waiver is not triggered. However, in this case, the absence of the fulfillment of the condition precedent in this case was largely due to Cardona Vicente's own conduct. In other words, he himself hindered the occurrence of the condition precedent. Therefore, he cannot escape his obligations under the waiver of appeal provision. Now, there is a contract principle known as prevention, whereby if a party hinders or renders impossible an occurrence or a condition, they will not be relieved of their duty to perform. And in this case, Cardona Vicente did something which was not contemplated in the plea agreement. The plea agreement contained a proposed advisory guideline range, which included a three-level reduction for acceptance of responsibility. After pleading guilty and during his interview with a probation officer, he backpedaled. He said that he was no longer the leader, that he had nothing to do with the firearms, and because of that, the PSR did not award him the three-level decrease for acceptance of responsibility. Because of that, the guideline range in the plea agreement differed from the guideline range in the PSR. So his actions contributed materially to the non-occurrence of the condition, which was the district court acceptance in the sentencing. Can I put this in a broader context? Yes, Your Honor. Normally, we don't like a single defense counsel to represent two different defendants in a conspiracy, or any other matter, because there's something sort of inherently odd about figuring out whether there are real conflicts of interest or not. So Cardona Vicente communicates with his original lawyer, I'm unhappy about the guilty plea I entered, you are well-roading me. And the original lawyer, of course, says to the court, I can't continue to represent him under those circumstances. And the court says, oh, well, I have another defense counsel in this case representing another defendant. And I think he can out here. And he ends up appointing that lawyer to represent Cardona Vicente after the government raises an objection and says, this may be a conflict of interest situation because of the murder. It's not the usual waiver of a guilty plea situation, where the defendant is saying to his original lawyer who entered the plea, it was the original lawyer, you sold me out. And now he's objecting that the successor lawyer was one who should never have been appointed for him. So it's discretionary with us whether we're going to buy your waiver of appeal argument. But you would do us a favor if you would talk about the merits of the claim that he's bringing. Most definitely, Your Honor. Moving to the merits, Cardona cannot show that Attorney Oppenheimer's direct representation of him and co-defendant number 9, Genneth Matos, resulted in an actual conflict of interest that adversely affected Mr. Oppenheimer's performance. Now, the burden on the defendant to get a reversal in such a type of case is that they need to show that counsel actively represented conflicting interests and that that actual conflict adversely affected the attorney's performance. Now, a mere theoretical division of loyalties... How do you respond to counsel's argument that on the issue of a leadership role, that because the attorney below was representing both of these people, that didn't impact his ability to fully investigate his recantation of no leadership role in this whatsoever? Your Honor, quite frankly, the attorney, Mr. Oppenheimer, who did replace Mr. Peter Diaz, did file a sentencing memorandum which indeed contested the leadership role enhancement. So that argument was made to the court, but it was ultimately denied. Now, the court also ruled on the motion to withdraw the guilty plea, which Mr. Oppenheimer also argued on behalf of the defendant, which was denied. Now, in all honesty, Your Honor, the first time I'm hearing about this leadership role is today at oral argument, and we would argue that that has been waived because it was not briefed. When you look at what the defendant, what the appellant has raised in his brief of what Attorney Oppenheimer could have done differently, it was a mere list of hypotheticals. For example, if the plea had been withdrawn and he had proceeded to trial, or if he had entered into a straight plea, or if indeed the plea persisted, but the PSR included a murder cross-reference. All of these are speculative because none of these indeed did happen. The district court anyway, at the sentencing hearing, noted that even though Mr. Oppenheimer, presumably at his client's request, disputed the leadership enhancement which was included in the PSR and which was included in the plea agreement, he noted that it was only a two-point leadership enhancement. And normally, this is one of the few cases, and given his assessment of it, it should have been a four. But nonetheless, he only used the two points which was put in the plea agreement itself. Now, aside from this mere theoretical division of loyalties, Gardona cannot show any actual conflict. As he stated here and in page 10 of his brief, by his own admissions, none of the complications that he said that could have happened ever materialized. And it's important to note that this joint representation happened at the sentencing hearing. At the time the joint representation happened, both the defendants had already negotiated their plea agreements and had already pled guilty. Now, Gardona seeks to rely on the prosecutor's statement that there might be a possible conflict of duty. Now, that was the prosecutor stating what had happened in the context of a motion hearing. But the prosecutor's theoretical is precisely what the Supreme Court said is not enough to show an actual conflict in and of itself. And he makes no viable claims of what Oppenheimer would have done differently at the sentencing hearing. Well, did the district court have any kind of duty to follow up once the issue had been raised and once he had directed counsel to explore the possibility of a conflict? Did the judge have any obligation to follow up on that? Your Honor, admittedly, the better practice would have been to conduct a foster hearing or a 44C. However, when you look at the motion hearing in this case, when Oppenheimer is at the motion hearing, the court actually does make a ruling based on the fact saying that there's no antagonism. All of the defendants had already entered into their plea agreements. When the issue of the murder came up in the context of this motion hearing, the court itself noted that that was negotiated away by the parties. There was no mention of it in Gardona's plea agreement or in his PSR. And in the co-defendant's case, they had agreed to a two-level enhancement for violence. So all of that was already negotiated away. It was taken off the table. There's no reason why it would have come out. And it didn't come out. So none of this actually came into fruition. Additionally, we know that Oppenheimer ably represented Catalina Vicente. Not only did he heed his wishes in trying to get the plea agreement withdrawn, which ultimately was unsuccessful, but he filed a sentencing memorandum arguing against the court's inclination to include a two-level increase for obstruction of justice, given his statements at the motion hearing. He attempted to persuade the court not to include an enhancement of leadership role. And ultimately, at the end of the day, the court imposed a variance sentence. The court determined that the guideline range for count one was 188. The low end was 188 months and ultimately imposed a 180-month sentence. So arguably, it's apparent from the record that Garibona received effective representation from Mr. Oppenheimer. Additionally, the government does want to note that the relief requested on appeal by Mr. Garibona could in theory result in an even harsher sentence. Although we think there is no merit whatsoever to this claim and it should be dismissed either on the merits or through the application of the waiver of appeal provision, there's no guarantee that if this case were to be remanded that he would actually get the same sentence. It could be a harsher sentence. Is the government asking us to resolve the ineffective assistance of counsel claim on this record? Well, the government's first line of attack, Your Honor, would be to dismiss the appeal given the waiver of appeal. And if the court does not want to enforce the waiver of appeal, we would argue that the record is sufficiently ripe and that it could be denied. Okay. Thank you.